IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIFTH THIRD BANK, an Ohio Banking Corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE ESTATE OF SAMUEL C. ZAMIAS, DECEASED; KATHLEEN ZAMIAS, individually and as Executrix of the Estate of Samuel Zamias; DAMIAN G. ZAMIAS, a resident of Pennsylvania; STEPHEN G. ZAMIAS, a resident of Pennsylvania; CHRISTOPHER ZAMIAS, a resident of Pennsylvania; ERIK ZAMIAS, a resident of Pennsylvania; SAMANTHA ZAMIAS, a resident of Pennsylvania; MICHAEL ZAMIAS, a resident of Pennsylvania; TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, an Iowa Corporation; and TRANSAMERICA LIFE INSURANCE COMPANY, an Iowa Corporation,<br><br>Defendants. | Case No. 3:18-cv-133<br><br>JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION

Before the Court is the Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) (ECF No. 20) filed by Defendants Estate of Samuel C. Zamias, deceased, Kathleen Zamias, individually and as Executrix of the Estate of Samuel C. Zamias, Damian G. Zamias, Stephen G. Zamias, Christopher Zamias, Erik Zamias, Samantha Zamias, and Michael Zamias (collectively, the "Zamias Defendants"). The motion has been fully briefed (*see* ECF Nos. 21, 27, 29) and is ripe for disposition. For the reasons that follow, the Court will **GRANT** the motion.

I.      **Background**

Fifth Third Bank ("Fifth Third") brings claims against the Zamias Defendants for fraudulent transfer and constructive fraud under the Pennsylvania Uniform Voidable Transactions Act (Count I) and for civil conspiracy (Count III). (ECF No. 1 ¶¶ 71-93, 107-15.) Fifth Third brings a breach of fiduciary duty claim against Defendant Kathleen Zamias, both as an individual and as Executrix of the Estate of Samuel C. Zamias (Count II). (*Id.* ¶¶ 94-106.) And finally, Fifth Third brings a claim for injunctive relief against Defendants Transamerica Occidental Life Insurance Company and Transamerica Life Insurance Company (Count IV). (*Id.* ¶¶ 116-18.)

Fifth Third alleges the following facts in its Complaint (ECF No. 1), which the Court considers true for purposes of deciding the instant Motion.

1.      **The Taylor and Pittston Loans**

Fifth Third financed real-estate development projects that members of the Zamias family undertook in the mid-2000s. (ECF No. 1 ¶ 25.) In April 2007, Fifth Third loaned $20,000,000 (the "Taylor Loan") to a Zamias-owned entity called Taylor Associates, LP. (*Id.* ¶ 25.) In June 2008, Fifth Third loaned $11,400,000 (the "Pittston Loan") to a Zamias-owned entity called Pittston Associates, LP. (*Id.* ¶ 33.) Certain members of the Zamias family (the "Zamias Guarantors")—George Zamias, Mariana Zamias, Defendant Damian Zamias, Defendant Stephen Zamias, and the late Samuel Zamias (whose estate, wife, and children are defendants in this lawsuit)—personally guaranteed repayment of the Taylor and Pittston Loans. (*Id.* ¶¶ 28, 34.)

Both loans were modified and amended after their execution. (*Id.* ¶¶ 29-31, 36-39.) Taylor Associates, LP and Pittston Associates, LP filed for Chapter 11 bankruptcy in 2015. (*Id.* ¶¶ 32, 40.) In 2015, the Zamias Guarantors entered into a Deficiency Note and Settlement Agreement on the Pittston Loan. (*Id.* ¶¶ 41-43.) As of June 2018, the outstanding balances of the Taylor and Pittston Loans total more than $6,000,000. (*Id.* ¶¶ 46-47.)

### 2. The Pending State-Court Actions

On March 14, 2017, Fifth Third Bank filed two Complaints in Confession of Judgment against the Zamias Guarantors—one in connection with the Taylor Loan and one in connection with the Pittston Loan—in the Court of Common Pleas of Cambria County, Pennsylvania.[1] (*Id.* ¶ 44.)

The Prothonotary of Cambria County entered two judgments against the Zamias Guarantors that same day. (*Id.* ¶ 45.) The judgments in the two cases amounted to a total of $6,463,154.70. (*Id.* ¶¶ 46-47.)

The Zamias Guarantors filed Petitions to Strike or to Open the Judgments by Confession and for Stay of Execution in the Court of Common Pleas of Cambria County to challenge the judgments. (*Id.* ¶ 48.) The Court issued a Rule to Show Cause why the judgments should not be opened or stricken. (*Id.*) The parties have engaged in discovery in connection with the Court's Rule to Show Cause, but the Court has not ruled on the

---

[1] The two Cambria County cases are Case Nos. 2017-00944 and 2017-00945. (ECF No. 1 ¶¶45-46.) The Complaint does not state which case involved the Taylor Loan and which involved the Pittston Loan.

Petitions. (*Id.* ¶ 49.) Therefore, the two state-court actions regarding the Taylor and Pittston Loans are still pending as of October 29, 2018. (ECF No. 21 at 2; ECF No. 27 at 5.)

### 3.     The TransAmerica Life Insurance Policy

Fifth Third's claims in this case involve the transfer of an interest in a life insurance policy. Fifth Third alleges, in short, that the Zamias Guarantors transferred an interest in a life-insurance policy to Zamias Defendants who are not guarantors on the Taylor and Pittston Loans, thereby ensuring that the transferred portion of the policy does not go towards satisfying the outstanding balances of the Taylor and Pittston Loans.

On April 23, 1991, Transamerica Occidental Life Insurance Company issued a life-insurance policy to George Zamias, and his wife, Mariana Zamias (the "Policy"). (ECF No. 1 ¶ 19.) The face value of the Policy was $15,000,000. (*Id.* ¶ 22.) The original owners and beneficiaries of the Policy were three sons of George and Mariana Zamias—Defendants Damian, Stephen, and Samuel Zamias. (*Id.* ¶¶ 23-24.) Damian, Stephen, and Samuel Zamias each held a one-third interest in the death benefit payable under the Policy. (*Id.* ¶ 24.)

Mariana Zamias passed away in November 2016, leaving George Zamias as the sole insured. (*Id.* ¶ 67.) The Policy is payable to the beneficiaries upon George Zamias's death, so long as he does not live past April 23, 2032. (*Id.* ¶ 70.) George Zamias is currently 88 years old. (*Id.* ¶ 69.) Thus, the Policy's death benefit will be payable to its beneficiaries so long as George Zamias does not live to be 102 years old. (*Id.* ¶ 69-70.)

Samuel Zamias passed away on September 14, 2013. (*Id.* ¶ 50.) His death left Damian and Stephen Zamias as the Policy's joint beneficiaries.[2] (*Id.* ¶ 53.)

In March 2016, Stephen and Damian Zamias transferred a one-third interest in the Policy to Samuel Zamias's Estate. (*Id.* ¶ 55.) This transfer left Stephen and Damian Zamias and the Estate of Samuel Zamias with equal one-third interests in the Policy. (*Id.*)

Then, in November 2016, the Zamias Defendants transferred the Estate's one-third share in the Policy to Kathleen, Samuel's wife, and their four children—Christopher, Erik, Samantha, and Michael. (*Id.* ¶¶ 57-61.) After the November 2016 transfer, Kathleen Zamias held a 12.02% interest in the Policy while Christopher, Erik, Samantha, and Michael Zamias each held 5.33% interests. (*Id.* ¶¶ 59-61.)

Fifth Third alleges that the Zamias Defendants undertook this series of transfers to prevent Fifth Third from satisfying the outstanding balance of the Taylor and Pittston Loans through the one-third interest in the Policy that was transferred to Kathleen Zamias and her four children. (*Id.* ¶¶ 63-65.) Fifth Third seeks a declaratory judgment voiding the transfer of the one-third interest in the Policy from Samuel Zamias's Estate to Kathleen and her four children. (*Id.* ¶¶ 93(a), 106(a), 115(a).) Fifth Third argues that it will sustain future harm and will be unable to satisfy the outstanding balance of the Taylor and Pittston Loans if this one-third interest in the Policy is transferred to Kathleen and the four children—who are not guarantors to the Taylor and Pittston Loans. (ECF No. 27 at 1-2.)

---

[2] The Policy provided that "if one of the Beneficiaries pre-deceased either or both of the Joint Insureds, the Policy would be equally divided among the remaining Beneficiaries." (*Id.* ¶ 51.) Thus, Samuel Zamias's interest in the Policy's death benefit ended upon his death, leaving Damian and Stephen Zamias as the Policy's joint beneficiaries. (*Id.* ¶ 52.)

II.     Jurisdiction and Venue

The Court has subject-matter jurisdiction under 28 U.S.C. § 1332. Fifth Third is an Ohio banking corporation with its principal place of business in Ohio, the Zamias Defendants are residents of Pennsylvania, and Defendants Transamerica Occidental Life Insurance Company and Transamerica Life Insurance Company are Iowa corporations with their principal places of business in Iowa. The amount-in-controversy exceeds $75,000.

Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action took place in the Western District of Pennsylvania.

III.    Legal Standard

A.      Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs a challenge to a court's subject-matter jurisdiction. A Rule 12(b)(1) motion to dismiss addresses "the very power [of the court] to hear the case." *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *Frisell v. Grier Sch.*, No. 3-14-cv-13, 2015 U.S. Dist. LEXIS 10390 (W.D. Pa. Jan. 29, 2015). "As the party asserting jurisdiction, [the plaintiff] bears the burden of showing that its claims are properly before the district court." *Dev. Fin. Corp. v. Alpha. House. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995).

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court must distinguish between facial attacks and factual attacks. "A facial attack challenges the sufficiency of the pleadings, and the Court must accept the Plaintiff's allegations as true."

*Stuler v. IRS*, No. 2:12-cv-0391, 2012 WL 1893579, at *1 (W.D. Pa. May 24, 2012) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). On the other hand, "[i]n a factual attack, this Court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, . . . limited evidentiary hearings" and other matters outside the four corners of the complaint. *Id.* (citing *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)); *see also Long v. Tommy Hilfiger USA, Inc.* No 2:09-cv-1701, 2011 WL 635271, at *2 (W.D. Pa. Feb. 11, 2011). Here, the Zamias Defendants assert a factual challenge to the Court's subject-matter jurisdiction over Fifth Third's declaratory judgment action.

### B. Rule 12(b)(6)

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[3] First, the court must "tak[e] note of

---

[3] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

IV. Discussion

    A. **The Court Will Grant the Zamias Defendants' Motion to Dismiss Under Rule 12(b)(1) Because Fifth Third's Claims are not Ripe for Disposition**

Federal courts may only hear cases when the controversy involved is ripe for determination by the court. *See, e.g., Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993). "The basic rationale of the ripeness doctrine is to prevent the courts, through the avoidance of premature litigation, from entangling themselves in abstract disagreements." *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983) (internal quotation marks omitted) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). "Because ripeness affects justiciability . . . unripe

claims should ordinarily be disposed of on a motion to dismiss." *Taylor Inv.*, 983 F.2d at 1290.

"[R]ipeness is a matter of degree . . . in declaratory judgment actions because declaratory judgments are typically sought before completed injury has occurred." *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs*, 580 F.3d 185, 190 (3d Cir. 2009) (quoting *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001); *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 (3d Cir. 1996)).

The Third Circuit has laid out a three-prong test to analyze whether a declaratory judgment action is ripe for adjudication.[4] First, courts must look to whether the parties' interests are adverse. *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990). Second, courts must examine whether a judicial judgment will conclusively resolve

---

[4] Here, Fifth Third's claims are not phrased explicitly as declaratory judgment actions. However, in its demands for relief in Counts I-III of its Complaint, Fifth Third requests a declaration from the Court to clarify the parties' rights. (ECF No. 1 at 13, 15, 17.) *See also* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States may declare the rights or legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). Although Fifth Third also seek compensatory damages, it does not allege that it has sustained any damages or plead specific facts that form a basis for seeking compensatory damages. And in their Motion to Dismiss, the Zamias Defendants point out that "[a]lthough the Bank requests 'compensatory damages' in its prayers for relief, the Bank does not plead facts demonstrating that it has sustained actual damages." (ECF No. 21 at 5.) Fifth Third did not refute this assertion in its Response to the Zamias Defendants' Motion to Dismiss. (*See* ECF No. 27.) Therefore, the Court will construe Counts I-III in Fifth Third's Complaint as declaratory judgment actions. And since Count IV of Fifth Third's Complaint, which seeks injunctive relief against Defendants Transamerica Occidental Life Insurance Company and Transamerica Life Insurance Company, is dependent upon the Court issuing declaratory relief in Counts I-III, the Court will not conduct a separate ripeness analysis with respect to Count IV because Count IV is based on the same underdeveloped factual circumstances as Counts I-III. Moreover, injunctive relief must be sought in connection some underlying claim. *See, e.g., United Telegraph Workers, AFL-CIO v. W. Union Corp.*, 771 F.2d 699, 703 (3d Cir. 1985) ("In deciding whether to provide preliminary relief, the district court must consider . . . the likelihood that the moving party will ultimately succeed on the merits."). But Fifth Third's Complaint merely seeks injunctive relief and does not state an underlying claim. (ECF No.1 ¶¶ 116-118.)

the controversy before the Court. *Pittsburgh Mack*, 580 F.3d at 190 (citing *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994)). Third, courts must evaluate whether judgment in a case would be of practical help or use. *Id.* at 191 (citing *Step-Saver*, 912 F.2d at 647). The Court will analyze each factor in turn.

1. **The Interests of Fifth Third Bank and the Zamias Defendants Are Not Adverse**

To establish that parties' interests are adverse, "the plaintiff must demonstrate that the probability of [a] future event occurring is real and substantial [and] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 190 (quoting *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992)). "[A] potential harm that is 'contingent' on a future event occurring will not satisfy this prong of the ripeness test." *Id.* (citing *Step-Saver*, 912 F.2d at 647-48; *Armstrong*, 961 F.2d at 413).

Here, Fifth Third Bank alleges that it will suffer future harm because the Zamias Guarantors will not be able to satisfy the outstanding balance of the Taylor and Pittston Loans if a one-third interest in the Policy is transferred to non-guarantors.

Fifth Third Bank's alleged future harm is contingent on a number of future events occurring, including:

(1) George Zamias passing away before April 23, 2032;

(2) the Court of Common Pleas of Cambria County upholding Fifth Third Bank's judgments against the Zamias Guarantors;

(3) the Zamias Guarantors having insufficient assets to satisfy the outstanding balance of the Taylor and Pittston Loans independent of their interests in the Policy;

(4) Damian and Stephen Zamias's interests in the Policy, which total $10,000,000, being insufficient to fulfill satisfy the outstanding balances of the Taylor and Pittston loans; and

(5) the Estate of Samuel Zamias remaining open at the time the Policy's death benefit is paid out.

Fifth Third Bank points out that, according to the United States Social Security Office's official actuarial tables, there is only a .375% chance that George Zamias lives past April 23, 2032. (ECF No. 27 at 8.) Therefore, the Court finds that it is substantially likely that the Policy's death benefit will be paid out some time in the future.

However, the overwhelming likelihood that the Policy's death benefit will be paid at some future time does not, in itself, warrant declaratory action here. For one, the outstanding balance of the Taylor and Pittston Loans could be resolved before the Policy's death benefit is paid out.

The Court of Common Pleas of Cambria County could strike or alter Fifth Third's judgments against the Zamias Guarantors.[5] (*See* ECF No. 1 ¶ 48; ECF Nos. 21-1, 21-2.) In its petitions, the Zamias Guarantors argue, *inter alia*, that Fifth Third committed fraud, engaged in predatory lending practices, and that the underlying amount of indebtedness is in dispute. (ECF No. 21-1 at 11-22.) Fifth Third admits that if the Cambria County Court of Common Pleas strikes the judgments, Fifth Third would have to pursue the underlying indebtedness at trial. (ECF No. 27 at 10.) And if Fifth Third has to pursue the

---

[5] For background on confession judgments under Pennsylvania law and the procedures for challenging them, see *FDIC v. Deglau*, 207 F.3d 153, 159-60 (3d Cir. 2000). If a court grants a motion to strike a confessed judgment, the judgment is vacated in its entirety. *See, e.g., Antipas v. 2102, Inc.*, No. 1998 WL 306537, at *4 (E.D. Pa. June 9, 1998). "An order of the court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered." *Midwest Fin. Acceptance Corp. v. Lopez*, 78 A.3d 614, 623 (Pa. Super. Ct. 2013) (quoting *Hazer v. Zabala*, 26 A.3d 1166, 1169 (Pa. Super. Ct. 2011)).

underlying indebtedness at trial, there is a possibility that the underlying debt is declared unenforceable.

The Zamias Guarantors could also satisfy the outstanding balance of the Taylor and Pittston Loans using other assets. Although Fifth Third alleges in its Complaint that the Zamias Guarantors are insolvent, a declaratory judgment voiding the transfer of the one-third interest in the Policy assumes that the Zamias Guarantors will remain insolvent until the Policy's death benefit is paid out. Put differently, Fifth Third's declaratory judgment action, and the future harm they allege, is contingent on the Zamias Guarantors' inability to satisfy the outstanding balance of the Taylor and Pittston Loans until the Policy's death benefit is paid out. However, even when assuming that Fifth Third's allegation of insolvency is accurate, it is possible that the Zamias Guarantors' financial situations improve enough to pay the outstanding balances of the Taylor and Pittston Loans before the Policy's death benefit is paid out. It is possible that the Zamias Guarantors use other assets to satisfy the outstanding balance of the Taylor and Pittston Loans before the Policy's death benefit is paid out.

Moreover, there are a number of conceivable scenarios where Fifth Third Bank is able to satisfy the outstanding balance of the Taylor and Pittston Loans after the Policy's death benefit is paid out *without* utilizing the disputed one-third interest in the Policy's death benefit. For one, Damian and Stephen Zamias's interests in the Policy's death payout could be used to fully satisfy the outstanding balance of the Taylor and Pittston Loans. Stephen and Damian Zamias's collective interest in the Policy totals $10,000,000,

while the Zamias Guarantors' total indebtedness to Fifth Third under the Taylor and Pittston Loans totals $6,463,154.70.

Finally, Fifth Third's alleged future harm is contingent on the Estate of Samuel Zamias remaining open at the time the Policy's death benefit is paid out. As a creditor, Fifth Third would only be entitled to the Estate's interest in the death benefit if the Estate remains open when the death benefit is paid out. If the Estate is closed at that time, its interest in the Policy's death benefit will be extinguished, and Fifth Third will not be entitled to any proceeds from the Estate's share of the death benefit.[6]

Accordingly, the Court finds that the future harm alleged in Fifth Third's declaratory judgment action are contingent on the occurrence future events that are not "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Pittsburgh Mack*, 580 F.3d at 190.

### 2. A Judgment in this Case Will Not Conclusively Resolve the Controversy

The second step in the ripeness inquiry is to look into whether judicial action will be conclusive. "In analyzing this factor, we must determine whether judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts." *Id.* at 190-91 (internal quotations omitted) (quoting *Presbytery of N.J.*, 40 F.3d

---

[6] The Court recognizes that if the Estate of Samuel Zamias's interest in the Policy's death benefit were extinguished upon the closure of the Estate, then Stephen and Damian Zamias would each hold one-half interests in the Policy's death benefit according to the terms of the Policy. Presumably, Fifth Third Bank would prefer this scenario—where guarantors on the Taylor and Pittston Loans would be poised to receive the Policy's death benefit. However, in that situation, it is possible that the insured, George Zamias, or beneficiaries Stephen and Damian Zamias could legitimately transfer an interest in the Policy's death benefit to non-guarantors before George Zamias's death. These future contingencies further indicate that this case is not ripe.

at 1468). "[A] decree issued by the district court [must] be sufficiently conclusive to define and clarify the legal rights or relations of the parties." *Step-Saver*, 912 F.2d at 648.

"[P]redominantly legal questions are generally amenable to a conclusive determination in a preenforcement context, so long as Article III standing exists." *Pittsburgh Mack*, 580 F.3d at 191 (citing *Presbytery of N.J.*, 40 F.3d at 1468). "[W]here the question presented is 'predominantly legal' . . . the need for factual development is not as great." *Armstrong*, 961 F.2d at 421 (quoting *Pacific Gas & Elec.*, 461 U.S. at 201).

Here, a ruling by the Court could be inconclusive. There are a number of scenarios where Court action to void the transfer of a one-third interest in the Policy would be ineffectual. First, the state court could strike the judgments or declare the underlying debt unenforceable at trial. Second, the balance of the Taylor and Pittston Loans could be satisfied prior to the payment of the Policy's death benefit. Third, the balance of the Taylor and Pittston Loans could be satisfied after the payout of the Policy's death benefit through Stephen and Damian Zamias's interests in the Policy's death benefit. A ruling by this Court that voids the transfer of the disputed share of the Policy would confuse the parties' rights if the outstanding balance of the Taylor and Pittston Loans are fulfilled through any of these avenues. Kathleen and her children would be deprived of the benefit they would have otherwise received from the Policy's death benefit, even though Fifth Third would have already received the outstanding balance of the Taylor and Pittston Loans. If this occurred, further litigation might be necessary to undo the Court's premature ruling and restore the rights of certain Zamias Defendants.

Moreover, as discussed in the preceding section, Fifth Third Bank's claims depend on a number of hypothetical facts. But most central to its claim is the possibility that the Zamias Guarantors will be unable to satisfy the outstanding portion of the Taylor and Pittston Loans until the Policy's death benefit is paid out. This argument depends on the Court finding that the Zamias Guarantors are insolvent. However, courts within the Third Circuit have held that "[i]nsolvency is a factual inquiry that often evades determination at the motion to dismiss stage." *In re FAH Liquidating Corp.*, 572 B.R. 117, 128 (Bankr. D. Del. 2017) (citing *Halperin v. Moreno (In re Green Field Energy Svcs., Inc.)*, 2015 WL 5146161, *7 (Bankr. D. Del. Aug. 31, 2015)). Therefore, Fifth Third Bank's claim to void the transfer is not a purely legal question that is amenable to resolution in a preenforcement declaratory judgment context.

Accordingly, the Court finds that Fifth Third Bank's claim fails to satisfy the second prong for ripeness. A judgment in this case will not be conclusive because the Court's judgment could be rendered futile by the occurrence of several future events.

### 3. It is Unclear Whether a Judgment in this Case Will Be Helpful or Useful

A declaratory judgment "must be of some practical help to the parties." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995). "Practical utility goes to whether the parties' plans of actions are likely to be affected by a declaratory judgment." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344-45 (3d Cir. 2001) (internal quotations omitted) (quoting *Step-Saver*, 912 F.2d at 649 n.9)).

The purpose of the Declaratory Judgment Act is to "clarify legal relationships so that [parties to a lawsuit] can make responsible decisions about the future." *Travelers Ins.*, 72 F.3d at 1155 (quoting the remarks of a Congressman during debate about the Declaratory Judgment Act). "[T]he proper focus of the utility inquiry is the effect of a declaratory judgment on the parties' future plans of action." *Armstrong*, 961 F.2d at 423. In *Step-Saver*, the Third Circuit found that the third prong of the ripeness inquiry was not satisfied because the parties would take the same actions in the future regardless of whether the Court granted a declaratory judgment. 912 F.2d at 649-50.

Here, it unclear whether this Court's judgment would change that parties' future courses of action. Regardless of this Court's decision, Fifth Third and the Zamias Guarantors will continue to litigate the confessed judgments on the Taylor and Pittston Loans in state court. It seems that Fifth Third will continue attempting to satisfy the outstanding indebtedness on the Taylor and Pittston Loans regardless of the Court's ruling here.

However, this Court's judgment on the transfer of the one-third interest in the Policy might change the Zamias Defendants future courses of action. A declaration that the transfer was invalid could affect the future financial decisions of Kathleen and her children. Similarly, if this Court declares the transfer invalid, Stephen and Damian Zamias may alter their future financial decisions, including those that relate to repayment of the Taylor and Pittston Loans.

Therefore, it is unclear whether a judgment in this case will be helpful to the parties or of practical use.

### 4. Other Considerations Weigh in Favor of Dismissal

Courts must also evaluate the potential hardship to the parties if the Court withholds adjudication because a dispute is not yet ripe. *See, e.g., Texas v. U.S.*, 523 U.S. 296, 301 (1998). The Zamias Defendants argue that Fifth Third will not face undue hardship if it is required to "wait until facts develop to create a concrete controversy for adjudication or show whether the relief sought is even necessary." (ECF No. 21 at 9.) Fifth Third argues, on the other hand, that it would suffer hardship if the Court refuses to hear this case because it will have to undertake "the burdensome, and potentially impossible, effort it will take to unwind the fraudulent conveyance once the Policy is paid to the Zamias Non-Guarantors." (ECF No. 27 at 11.)

The Court is not persuaded that Fifth Third will face undue hardship if the Court decides not to hear this case on ripeness grounds. If future events require Fifth Third to protect its interests in court, Fifth Third can bring the exact same type of declaratory judgment action with a more fully developed factual background. Moreover, the Court is

not persuaded that it will be impossible for Fifth Third to protect its rights if the Policy's death benefit becomes payable. If the Taylor and Pittston Loans have not been satisfied when the Policy's death benefit becomes payable, Fifth Third will be able to file the same sort of declaratory judgment action and seek a temporary restraining order to ensure that the Policy's death benefit is not paid out improperly.

### 5. This Case is not Ripe for Adjudication

In conclusion, the Court finds that Fifth Third's claims fail the first, second, and possibly the third prong of the ripeness test. Further, the Court finds that Fifth Third will not suffer undue hardship if the Court refuses to hear this case on ripeness grounds. Thus, this case must be dismissed because the underlying controversy is not ripe for judicial review.

### B. The Court Need Not Reach the Zamias Defendants' Rule 12(b)(6) Arguments

The Court is precluded from exercising jurisdiction over this case because Fifth Third's claims are not ripe for adjudication. Accordingly, the Court will not address the merits of Fifth Third's claims and the Zamias Defendants' Rule 12(b)(6) arguments for their dismissal.

## V. Conclusion

For the foregoing reasons, the Court finds that Fifth Third's claims are not ripe for disposition. Accordingly, the Court will dismiss **GRANT** the Zamias Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIFTH THIRD BANK, an Ohio Banking Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> THE ESTATE OF SAMUEL C. ZAMIAS, ) <br> DECEASED; KATHLEEN ZAMIAS, individually ) <br> and as Executrix of the Estate of Samuel Zamias; ) <br> DAMIAN G. ZAMIAS, a resident of Pennsylvania; ) <br> STEPHEN G. ZAMIAS, a resident of Pennsylvania; ) <br> CHRISTOPHER ZAMIAS, a resident of ) <br> Pennsylvania; ERIK ZAMIAS, a resident of ) <br> Pennsylvania; SAMANTHA ZAMIAS, a resident of ) <br> Pennsylvania; MICHAEL ZAMIAS, a resident of ) <br> Pennsylvania; TRANSAMERICA OCCIDENTAL ) <br> LIFE INSURANCE COMPANY, an Iowa ) <br> Corporation; and TRANSAMERICA LIFE ) <br> INSURANCE COMPANY, an Iowa Corporation, ) <br> ) <br> Defendants. ) | Case No. 3:18-cv-133 <br><br> JUDGE KIM R. GIBSON |

ORDER

AND NOW, this __17th__ day of December 2018, upon consideration of the Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) (ECF No. 20) filed by Defendants Estate of Samuel C. Zamias, deceased, Kathleen Zamias, individually and as Executrix of the Estate of Samuel C. Zamias, Damian G. Zamias, Stephen G. Zamias, Christopher Zamias, Erik Zamias, Samantha Zamias, and Michael Zamias, **IT IS HEREBY ORDERED THAT** the Motion is **GRANTED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE